UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TALON MOTOR SPORTS, LLC, d/b/a
TANOM MOTORS, a Virginia limited                   Case No. 11-15570
liability company,
                                                    Paul D. Borman
              Plaintiff/Counter-Defendant,    United States District Judge

v.                                                  Mark A. Randon
                                                    United States Magistrate Judge

ADVANCED COMPOSITE TECHNOLOGY,
INC., a Michigan Corporation, and
CONCORDE MANUFACTURING, INC.,
a Michigan corporation,

              Defendants/Counter-Plaintiffs.
_____/

**OPINION AND ORDER DENYING PLAINTIFF/COUNTER-DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 29)**

This matter comes before the Court on Plaintiff/Counter-Defendant Talon Motor Sports, LLC, d/b/a Tanom Motors's ("Tanom") Motion for Partial Summary Judgment. (ECF No. 29.) Defendants/Counter-Plaintiffs Advanced Composite Technology, Inc. ("ACT") and Concorde Manufacturing, Inc. ("Concorde) filed a response (ECF No. 33) and Tanom filed a reply (ECF No. 34). The Court has determined that oral argument is not necessary and issues this opinion based upon the parties' written submissions pursuant to E.D. Mich. L.R. 7.1(f). For the reasons that follow, the Court DENIES Tanom's motion for partial summary judgment.

**I.    BACKGROUND**

Plaintiff Talon Motor Sports, LLC d/b/a Tanom Motors ("Tanom" or "Plaintiff"), is a domestic vehicle manufacturer of High Performance Reverse Trikes ("HPRT"). (ECF No. 1,

Complaint ¶ 11.) Defendants Concorde Manufacturing, Inc. ("Concorde") and Advanced Composite Technologies, Inc. ("ACT") supply high-end engineering, design, tooling, assembly, painting, process development, and manufacturing services to automotive, marine, aerospace, and commercial customers. (ECF No. 16, Verified Counterclaim ¶ 7.) Concorde and ACT operate under the common ownership of Gilbert Villarreal. (*Id*.)

The vehicles at issue in this action are the Tanom Invader TC-3 and TR-3 (hereinafter collectively "the Vehicle(s)"), high performance three-wheel vehicles that merge features of the automobile and the motorcycle into one unique light-weight, open-wheel vehicle, built within a luxury sports car mold. (*Id*. ¶ 12.) On or about March 8, 2011, ACT and Tanom entered into a contract ("the ACT contract") under which ACT agreed, among other things, to manufacture certain tooling and components and to provide certain painting services in connection with the Vehicles. (Compl. ¶ 15, Ex. 3; Counterclaim ¶ 9.) On that same date, Concorde and Tanom entered into a contract ("the Concorde contract") under which Concorde agreed, among other things, to provide assembly services in connection with the Vehicles. (Compl. ¶ 15, Ex. 4; Counterclaim ¶ 9.)

Among other things, and as relevant to Talon's motion for partial summary judgment, the ACT Contract provided that:

> 8. **TOOLING**. ACT will manufacture or have manufactured tooling for the manufacture of components which will be utilized in the assembly of the product. It is agreed that once paid for, said tooling will be the property of Talon and ACT will have no right to utilize this tooling for any other purpose than to manufacture product for Talon.
>
> 8.3 **Terms**. Terms for tooling will be 40% down, 40% first shots and 20% net-30 of first shots. It is understood that tooling first shots will be accomplished as each tool is completed.
>
> 9. **PRODUCT**. ACT will manufacture product for Talon to the agreed to specifications upon receipt of all information contained in this Agreement.

> 9.6 **Terms**. Terms for manufactured product are 50% down with order, 50% net-30 from invoicing.

(ECF No. 1, Compl. Ex. 3, ACT Contract.)

The Concorde Contract among other things, and as relevant to Talon's motion for partial summary judgment, provided that:

> 8. **TOOLING**. Concorde will manufacture or have manufactured tooling for the manufacture of components which will be utilized in the assembly of the product. It is agreed that once paid for, said tooling will be the property of Talon and Concorde will have no right to utilize this tooling for any other purpose than to manufacture product for Talon.
>
> 8.3 **Terms**. Terms for tooling will be 40% down, 40% first shots and 20% net-30 of first shots.
>
> 9. **PRODUCT**. Concorde will assemble products for Talon into Units to the agreed to specifications upon receipt of all information contained within this Agreement.
>
> 9.7 **TERMS**. Terms for Units are 50% down with order, 50% net-30 from invoicing.

(ECF No. 1, Compl. Ex. 4, Concorde Contract.)

It is undisputed that ACT commenced work on manufacturing the tooling that was intended ultimately to produce these body panels and parts but that the Vehicles, and hence the body parts, were never produced or required to be painted or assembled. What is in dispute, and the issue that lies at the heart of this case (but not this motion) is who was responsible for ACT and Concorde's failure or inability to produce the Vehicles as contemplated by the Contracts. To summarize simply, Tanom asserts that ACT and Concorde failed to timely produce satisfactorily completed tooling, parts, or assembled Vehicles; ACT and Concorde assert that they were prevented from doing so by Tanom's own failure to provide ACT and Concorde with the designs, engineering, specifications, and component parts that it was contractually obligated to provide, making completion of the tooling

and production of the parts impossible.

Following the breakdown of the parties' contractual relationship, Tanom instituted this action on December 20, 2011, to recover the tooling and related property that remained in Defendants' possession and to recover damages under the ACT and Concorde Contracts. On or about January 13, 2012, the parties entered into an Interim Agreement, under which the tooling that was in Defendants' possession was to be returned to Tanom and certain amounts that Tanom would pay Defendants to complete certain tooling would be deposited in an escrow account with the Court pending the delivery of that completed tooling to Tanom. (Defs.' Resp. Ex. 5, Interim Agreement.) The tooling has now been returned and/or delivered to Tanom and ACT and Concorde are in receipt of the $75,000 that was held by the Court in Escrow pending the return of that tooling to Tanom. *See* ECF No. 48, Order (1) Granting ACT's Motion to Release Escrow and (2) Denying ACT's Motion for Sanctions (Randon, M.J., without objection.) The parties continue to litigate their claims and counterclaims for contract damages and dispositive motions are due to be filed by October 31, 2013. (ECF No. 49, Order Extending Scheduling Order Dates by 60 Days.) Discovery also is ongoing, scheduled to be completed by September 30, 2013, *see id.*, and a discovery dispute is currently pending before Magistrate Judge Randon and scheduled for hearing on September 5, 2013.

Tanom moves now for partial summary judgment on an issue that it deems to be without genuine material factual dispute – it seeks to recover amounts that it claims it paid to ACT and Concorde, earmarked as deposits for parts and services that undisputedly were never produced or provided. Tanom does not now seek damages or the return of monies paid with respect to any tooling; it seeks the return only of amounts paid down on production parts and assembly services that both parties concede never were produced or provided under the Contracts.

The facts pertinent to this motion for partial summary judgment are not in dispute: as of February 1, 2012, Tanom had made more than $1 million in payments to ACT and Concorde, included among them were the following payments:

- ♦ A payment to ACT dated August 16, 2011, in the amount of $80,512.48, for component parts/production panels;

- ♦ A payment to Concorde dated August 16, 2011, in the amount of $159,923.63, for vehicle assembly services; and

- ♦ A payment to ACT dated September 14, 2011 in the amount of $46,232.30, for non-tooling related work/parts and paint, that was part of a larger payment to ACT of $191,821.01.

(ECF No. 29, Pl.'s Mot. 8-10; ECF No. 33, Defs.' Resp. 4; Ex. 3, Jan. 8, 2013 Declaration of Stephen P. McLaughlin ¶ 3.)  These payments, which Tanom seeks to recover in this motion for partial summary judgment, total $286,668.41.

As to the August 16, 2011 payment of $80,512.48, an August 16, 2011 Notice of Outgoing Wire Transfer from Stellar One Bank on the account of Talon Motor Sports LLC to the account of ACT contains the following legend: "Originator to Beneficiary Information, ACT-Deposit on Panels Per Contract."  (Pl.'s Mot. Ex. 1, Notice of Wire Transfer.)  The accompanying Domestic Wire Transfer Authorization Form contains the same explanatory detail.  (*Id.* at 2.)  Section 9.6 of the ACT Contract required Tanom to make a deposit of 50% for production of Vehicles with an order.  (ECF No. 1, Compl. Ex. 3, ACT Contract § 9.6.)  The $80,512.48 was 50% of an assumed cost to produce the panels (less painting costs) of $161,024.96. (Pl.'s Mot. Ex. 3, Aug. 12, 2011 Email from Sandy Hall to Gilbert Villarreal.)

As to the August 16, 2011 payment of $159,923.63, an August 16, 2011 Notice of Outgoing Wire Transfer from Stellar One Bank on the account of Talon Motor Sports LLC to the account of ACT contains the following legend: "Originator to Beneficiary Information, Concorde - Deposit on First Order of 25.) (Pl.'s Mot. Ex. 2, Notice of Wire Transfer.) The accompanying Domestic Wire Transfer Authorization Form contains the same explanatory detail. (*Id*.) Section 9.7 of the Concorde Contract required Tanom to make a deposit of 50% for assembly of production vehicles with an order. (Compl. Ex. 4, Concorde Contract § 9.7.) The total anticipated cost of the first 25 Vehicles was $319,847.25 and $159,923.63 represented 50% of this total. (Pl.'s Mot. Ex. 3, 8/3/12 Hall Email.)

As to the September 14, 2011 payment of $191,821.01, this payment related to deposits on certain Extra Work Orders ("EWOs") for tooling, parts and painting. A September 14, 2011 Notice of Outgoing Wire Transfer from Stellar One Bank on the account of Talon Motor Sports LLC to the account of ACT contains the following legend: "Originator to Beneficiary Information, Concorde Deposit on EWO's." (Pl.'s Mot. Ex. 4, Notice of Wire Transfer.) The accompanying Domestic Wire Transfer Authorization Form contains the same explanatory detail. (*Id*.) Of the $191,821.01, $11,794.80 was a 50% deposit on parts and $34,437.50 was a 50% deposit on paint. (Pl.'s Mot. Ex. 6, Spreadsheet.) Tanom seeks return of the portion of this deposit attributable to parts and paint, i.e. $46,232.30.

Neither the fact nor the amount of the payments are in dispute - but their characterization is at the heart of this motion. Tanom argues that these amounts were "deposits" paid by Tanom to ACT and Concorde for the production of body panel parts and assembly of vehicles, events that the parties agree never occurred. (Pl.'s Br. 1.) ACT and Concorde do not dispute the payments, or the

6

amounts, nor do they contest the fact that the parties never reached the production and assembly stages of the Contracts. They assert, however, that these payments were not "deposits," but were instead "progress payments 1, 2 and 3," respectively, under the parties' ordinary course of dealing and were not segregated or dedicated to a particular purpose, to be returned to Tanom if the project failed. (ECF No. 33, Defs.' Resp. Br. 3.) Moreover, Defendants assert that progress payments 1 and 3, which were originally for parts and paint, were expressly intended by agreement of the parties to be applied to the outstanding balance on the tooling that was owed to ACT. (Defs.' Resp. Br. 6, Ex. 3, McLaughlin Dep. ¶ 4.) According to Defendants, this amount, in addition to the $100,000 (later reduced to $75,000) that was paid into Escrow, was calculated to fully compensate Defendants for the tooling balance. (*Id.* ¶ 5.)

Defendants concede that Tanom has paid them $1,074,862.23, $860,833.72 of that to ACT for tooling. (Defs.' Resp. Br. Ex. 4, Defs./Counter-Pls.' Rule 26(a) Initial Disclosures 11-12; Defs.' Resp. Br. Ex. 3, McLaughlin Decl. Ex. A.) These amounts, which the parties appear to acknowledge have been paid to ACT and Concorde, significantly exceed the amounts due under the parties' original Contracts; Tooling under the ACT Contract was estimated at $582,574 and Tooling under the Concorde Contract was estimated at $188,695.88. (Compl. Exs. 3, 4, ACT and Concorde Contracts, Tooling Costs.) The reasons for these tooling cost variances from the Contract(s) are not fully explained in the parties' submissions and it appears that there remain unresolved disputes over certain requested EWOs. (Pl.'s Reply 5; Ex. B, Aug. 26, 2011 Email from Sandy Hall to Gilbert Villarreal.)

7

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order.  Fed. R. Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial.  *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).  "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 759 (6th Cir. 2010).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial.... In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

**III.     ANALYSIS**

Not surprisingly, both parties' submissions are "light on law," each relying on inarguable principles of the law of restitution. Tanom argues that:

> The Uniform Commercial Code provides that where a seller fails to make delivery or repudiates, the buyer may cancel the contract and '***in addition to recovering so much of the price as has been paid,***' recover its damages. *See* Mich. Comp. Laws § 440.2711(1)(a)&(b). Tanom is entitled to the recovery of those monies which it paid to Defendants as deposits allowed under § 440.2711(1) and ordinary principles of restitution.

(Pl.'s Br. 8) (emphasis in original). Hence, Tanom argues, it is entitled to recover these three particular deposits now because there is no dispute that the parts and services that are the object of these payments were never "delivered."

ACT and Concorde respond that Tanom ignores those principles of restitution and the UCC that apply when the *buyer* is a breaching party, as ACT and Concorde claim here by way of their Counterclaim against Tanom:

> Where the buyer is the breaching party, however, a different section of the UCC – 2-718(3) – applies. Section 2-718(3) operates to limit a breaching buyer's restitution remedy to the amount of its part performance, if any, that exceeds the damages caused by the breach:
>
> (3) The buyer's right to restitution . . . is subject to offset to the extent that the seller establishes
>
> (a) a right to recover damages under the provisions of this article other than subsection (1) [i.e. a valid liquidated damages clause], and
>
> (b) the amount or value of any benefits received by the buyer directly or indirectly by reason of the contract.
>
> Mich. Comp. Laws § 440.2718(3); *see also* 1 James J. White & Robert S. Summers, Uniform Commercial Code § 7:32 (6th ed. 2012) (stating that section 2-718(3) "further reduces the buyer's potential recovery in restitution to put the seller in the place that he should have been had the buyer performed.")

(Defs.' Resp. 7-8.) Defendants suggest that the common-law rule is the same:

> [I]f a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.

(*Id.*) (quoting Restatement § 374(1)).

There has yet to be an adjudication of which party or parties breached the Contracts in this case. In fact, discovery is ongoing and dispositive motions are not due until October 31, 2013. (ECF No. 49, Order Extending Scheduling Order Dates By 60 Days.) Indeed, Tanom does not purport to address in this motion the merits of the contract dispute raised in the parties' claims and counterclaims. It expressly disavows, for purposes of this motion only, a claim to return of any "deposits" paid on tooling. It argues, however, that it is entitled summary judgment on its claim as to these three deposits because the product or service on which the money was "paid down" never was produced or delivered.

Defendants have responded to Tanom's motion with the Declaration of Stephen McLaughlin, the sales representative for ACT and Concorde who "oversaw every aspect of the relationship between ACT and Concorde," including negotiation of the Contracts, the course of performance under the Contracts and the financial impact of Tanom's alleged breach of those Contracts. (Defs.' Resp. Ex. 3, McLaughlin Decl. ¶ 2.) Tanom does not attempt to rebut the majority of the facts set forth in the McLaughlin Declaration but rather argues that those facts are irrelevant for purposes of this motion and that the only salient facts that entitle Tanom to relief on this motion are undisputed, i.e. that these three payments were "down payments" on products or services that Defendants concede were never produced or provided. Tanom states that Defendants' claim that they are entitled to damages based on their counterclaim is too "speculative" and that their argument that

11

Tanom breached the Contracts is "unsupported" - yet Tanom's motion does not purport to address the merits of the counterclaim, and no one can seriously suggest that those issues are ripe for decision by the Court.

Deposits? Down Payments? Progress Payments? Semantics aside, questions of fact preclude granting Tanom's motion for partial summary judgment at this stage. The McLaughlin Declaration submitted by Defendants in opposition to the motion creates at the very least a question of fact, at least on the present record, regarding whether or not the parties actually agreed at some point in time that the first and third payments identified in Tanom's motion that were initially designated as "down payments" on parts and paint would instead be applied to the outstanding tooling balance. In its motion for partial summary judgment, Tanom does not even purport to address the merits of the underlying contract and damages issues at the heart of this action. Nor do they question the legal argument presented by Defendants in their response on the nature of restitution damages, i.e. that if Defendants were ultimately to prevail on the underlying breach of contract arguments presented in the parties' claims and counterclaims, and if they prove their damages as asserted in their initial damages calculation, Tanom may in fact be liable to ACT and/or Concorde for additional money damages.

Tanom's motion puts the cart before the horse. The McLaughlin Declaration sets forth facts, including a preliminary damages calculation in support of Defendants' counterclaim, that create several genuine issues of material fact on the present record that preclude granting partial summary judgment now, even as to these discrete "deposits." The Court expresses no opinion on these or any issues related to the underlying claims and counterclaims in this action. Nor is the Court passing final judgment on the underlying merits of Tanom's claim that it is entitled to summary judgment

as to these deposits. It is sufficient to note, for purposes of denying the relief sought in Tanom's motion, that at this stage of the proceedings, while discovery proceeds and dispositive motions have yet to be filed, such factual disputes preclude the Court's entering summary judgment now, based upon this record. Accordingly, Tanom's motion for partial summary judgment on these three payments is premature and is denied.

**IV.    CONCLUSION**

For the foregoing reasons, the Court DENIES Tanom's motion for partial summary judgment.

IT IS SO ORDERED.


                                                                    s/Paul D. Borman  
                                                                    PAUL D. BORMAN  
                                                                    UNITED STATES DISTRICT JUDGE

Dated:  August 26, 2013


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 26, 2013.

                                                                  s/Deborah Tofil  
                                                                    Case Manager